UNITED STATES DISTRICT COURT
FOR DISTRICT OF NEW JERSEY

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>OCEAN GROVE NJ LLC, OCEAN GROVE OPERATING LLC, SAGE HOME MANAGEMENT LLC d/b/a SAGE HEALTHCARE PARTNERS, ABC COMPANIES 1-100 (fictitious entities), & JOHN DOES 1-100 (fictitious persons),<br><br>Defendants. | Case No. __23-cv-3554_____ |

## COMPLAINT

Plaintiff Federal National Mortgage Association ("Fannie Mae" or "Lender"), by its attorneys, ArentFox Schiff LLP, as and for its Complaint against the above-captioned Defendants, alleges as follows:

### Nature of the Action

1. This is an action by Fannie Mae to foreclose a certain mortgage (as more particularly defined herein, "Mortgage") encumbering the ground lease estate ("Ground Lease Estate") on property located at 70 Stockton Avenue, Ocean Grove, NJ 07756 ("Property") in connection with the premises known as "Allegria at Ocean Grove" (the "Premises").[1] The

---

[1] Concurrently with this Complaint, Plaintiff files a Proposed Order to Show Cause for Defendants to demonstrate why a receiver should not be appointed, as explained herein.

Premises is a 138-unit comprehensive personal care home facility, providing 77 assisted living units and 61 memory care units for 161 residents.[2]

2. Fannie Mae is the current owner and holder of the Note and Mortgage (defined herein).

3. Defendant Ocean Grove NJ LLC ("Ocean Grove" or "Borrower") executed the Mortgage and other agreements as security for a multifamily loan ("Loan") that original lender, Greystone Servicing Corporation, Inc. ("Greystone" or "Original Lender"), made to Ocean Grove in the principal amount of $23,995,000 in accordance with a certain Multifamily Loan and Security Agreement (as more particularly defined in Paragraph 20 herein).

4. Due to Borrower's defaults on the Loan and related Loan Documents (as defined more fully herein), Fannie Mae seeks to foreclose the Mortgage, and also related Loan Documents to the extent they constitute security agreements.

5. Fannie Mae also seeks payment of certain Rent ("Rent" and "Rents", as defined herein) and the appointment of a receiver to take possession of the ground lease estate and premises that are the subject of this foreclosure action, operate and manage the premises using the companies currently employed for those purposes until an appropriate transition can be made to new companies, and collect Rent for debt service and the operations of the premises.

## The Parties

6. Fannie Mae, assignee of the Loan Documents, is a government-sponsored enterprise and federally chartered corporation organized and existing under the laws of the

---

[2] Certain facts are drawn from the accompanying Declarations of Carol S. King ("King Decl.") and Matt Trent ("Trent Declaration"), which are being filed simultaneously in support of Plaintiff's Motion for Appointment of Receiver brought by Order to Show Cause. Ms. King is Senior Asset Manager, Multifamily Loss Mitigation of Fannie Mae. Mr. Trent is a loss mitigation asset manager at Greystone Servicing Company LLC, the Fannie Mae Delegated Underwriting and Servicing Program lender and servicer that originated and is servicing the Loan. A Proposed Order appointing a receiver is attached as Exhibit 1 to the King Declaration.

United States, and is deemed a citizen of the District of Columbia for purposes of jurisdiction and venue. *See* 12 U.S.C. § 1717(a)(2)(B). It is authorized to transact business in New Jersey. Congress created Fannie Mae to enhance the nation's housing finance market. Under its federal statutory charter, Fannie Mae has a public mission to provide liquidity, stability, and affordability to the U.S. housing market, including the market for quality, affordable rental housing. Fannie Mae is operating under the conservatorship of the Federal Housing Finance Agency ("FHFA"), which is an independent agency of the United States created in 2008 to supervise certain Government Sponsored Enterprises including Fannie Mae. *See* 12 U.S.C. § 4511 *et seq*. Among other powers, Congress granted the Director of FHFA the authority to place Fannie Mae into conservatorship under certain, statutorily defined conditions, which the Director did in 2008. As Conservator, FHFA has broad statutory powers, including the powers to preserve and conserve Fannie Mae's assets and property, and to collect obligations due Fannie Mae. FHFA's ability to exercise its statutory powers and functions as Conservator is protected by federal law. *See, e.g.*, 12 U.S.C. § 4617(f).

7. On information and belief, Defendant Ocean Grove NJ LLC ("Borrower"), is a New Jersey limited liability company, located at 395 Pearsall Avenue, Suite K, Cedarhurst, New York 11516.

8. On information and belief, Defendant Ocean Grove Operating LLC ("Operator"), is a New Jersey limited liability company, located at 395 Pearsall Avenue, Suite K, Cedarhurst, New York 11516.

9. On information and belief, Defendant Sage Home Management LLC d/b/a Sage Healthcare Partners ("Manager"), is a New York limited liability company, located at 395 Pearsall Avenue, Suite K, Cedarhurst, New York 11516.

10. On information and belief, the members of Borrower, Operator and Manager are residents of the State of New York.

11. On information and belief, Defendants ABC Companies and John Does ("Non-Record Lienors") have or may have claims, encumbrances, interests and/or liens against the Property. On information and belief, after reasonable inquiry and due diligence, the name(s) and address(es) of said Defendant(s) is/are not known or cannot be ascertained at this time. For diversity purposes, the citizenship of said Defendant(s), to the extent said Defendant(s) exists, cannot be determined at this time.

## Jurisdiction and Venue

12. Jurisdiction exists in this Court pursuant to 28 U.S.C. § 1332 because there is complete diversity among the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

13. Plaintiff is deemed to be a citizen of the District of Columbia for purposes of jurisdiction and venue. 12 U.S.C. § 1717(a)(2)(B).

14. The Court has personal jurisdiction over the Defendants because the Loan Documents contain a choice-of-law and consent-to-jurisdiction provision that expressly provide for jurisdiction and venue in the State of New Jersey.

15. In addition, venue is proper in New Jersey because the Property and the transactions giving rise to the claims herein occurred in New Jersey, and this litigation concerns, *inter alia*, foreclosure of a ground lease on real property located in New Jersey.

## The Ground Lease

16. Borrower is the "Ground Lessee" of the Premises pursuant to a certain Amended, Restated and Consolidated Ground Lease Agreement, dated April 7, 2017 (the "Ground Lease")

and effective May 2, 2017, between The Ocean Grove Camp Meeting Association of the United Methodist Church, as Landlord (the "Ground Lessor"), and Borrower, as Tenant. *See* **Exhibit A**.

17. The Ground Lease has a term of ninety-nine (99) years, with a termination date of December 31, 2116, unless terminated earlier.

18. Pursuant to a certain Ground Lessor Estoppel and Agreement, made on May 2, 2017 (the "Estoppel"), Ground Lessor agreed that Greystone (as defined herein) may assign the Loan Documents to another lender without the need for Landlord's consent. *See* **Exhibit B**.

19. Landlord also agreed under the Estoppel that if Fannie Mae (as assignee of the Loan Documents) or any party succeeds to the interest of Borrower under the Ground Lease as a result of a foreclosure or other conveyance, that party shall become a substituted lessee under the Ground Lease without the need for Ground Lessor's consent.

## The Loan Documents and Related Agreements

*The Loan, Loan Agreement and Note*

20. On or about March 26, 2019, Original Lender made a loan to Borrower (the "Loan") in the principal amount of $23,995,000 pursuant to a certain Multifamily Loan and Security Agreement (the "Loan Agreement"). *See* **Exhibit C**.

21. On or about March 26, 2019, Original Lender assigned the Loan to Fannie Mae and executed a certain Assignment of Collateral Agreements and Other Loan Documents (the "Collateral Assignment") pursuant to which Original Lender assigned to Fannie Mae the Loan Agreement and other Loan Documents, including those identified on Exhibit A to the Collateral Assignment. *See* **Exhibit D**.

22. The Loan is evidenced by the Multifamily Note (the "Note") dated March 26, 2019, made by Borrower to Original Lender in the principal amount of $23,995,000 and endorsed by Original Lender to Fannie Mae as of March 26, 2019. *See* **Exhibit E**.

23. As described in Schedule 2 of the Loan Agreement, the term of the Loan is 120 months, with the Borrower obligated to make interest-only payments from May 1, 2019 through April 1, 2021, and principal and interest payments commencing on May 1, 2021. Interest is at fixed rate of 5.11%.

24. The Maturity Date for full payment of the Loan is April 1, 2029, or any earlier date on which the unpaid principal balance of the Loan become due and payable by acceleration or otherwise.

25. Section 14.01(a) of the Loan Agreement identifies automatic "Events of Default," including, any failure to pay or deposit when due any amount required by the Note, the Loan Agreement or any other Loan Document.

26. Section 14.02(a) of the Loan Agreement provides that if an Event of Default has occurred and is continuing, the entire unpaid principal balance of the Loan, together with accrued interest, default interest and prepayment premium, if applicable, at Lender's option, shall immediately become due and payable. Section 14.02(a) specifically provides that "Lender shall have all rights and remedies afforded to Lender hereunder and under the other Loan Documents, including, foreclosure on and/or the power of sale of the Mortgaged Property, as provided in the Security Instrument [Mortgage], and any rights and remedies available to Lender at law or in equity (subject to Borrower's statutory rights of reinstatement, if any)."

***The Mortgage***

27. The Note and Loan Agreement are secured by a certain Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Mortgage" or "Security Instrument") encumbering the Ground Lease, which Mortgage Ocean Grove executed and delivered to Original Lender on March 26, 2019. *See* **Exhibit F**.

28. Original Lender recorded the Mortgage on March 28, 2019, in the records of Monmouth County, New Jersey, in Book 9341, Page 3539. *See* **Exhibit F**.

29. Original Lender assigned the Mortgage to Fannie Mae pursuant to the Assignment of Mortgage dated March 26, 2019, which Assignment of Mortgage was recorded on March 28, 2019, in the records of Monmouth County, New Jersey, in Book 9341, Page 3587. *See* **Exhibit F**.

30. Following the assignment of the Loan to Fannie Mae, Greystone continues to act as servicer for the Loan.

31. The Borrower, in Section 3 of the Mortgage: (a) assigned all "Leases and Rents" (as defined therein) to Lender, whom it authorized to collect and receive all Rents without any

further action by Borrower, (b) Borrower retained a revocable license to, among other things, collect Rents and operate the Premises absent an Event of Default and (c) agreed that upon an Event of Default, Lender was authorized to collect all Rents directly and to take possession and control of the Mortgaged Premises.

32. Additionally, in Section 3(e) of the Mortgage Borrower consented to Fannie Mae's application to the court for appointment of a receiver.

> *Notwithstanding any other right provided Lender under this Security Instrument or any other Loan Document, if an Event of Default has occurred and is continuing, and regardless of the adequacy of Lender's security or Borrower's solvency, and without the necessity of giving prior notice oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in Section 3.If Lender elects to see the appointment of a receiver for the Mortgage Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Security Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver ex parte, if permitted by applicable law. Borrower consents to shortened time consider of a motion to appoint a receiver.*

33. Section 5(a) of the Mortgage provides that upon an Event of Default, Lender is entitled, among other rights, to foreclose the Mortgage.

*The Facility Operating Agreement and Management Agreement*

34. On information and belief, Operator is the master lessee of the Premises pursuant to a Lease Agreement dated February 1, 2017 with Borrower (the "Operating Lease" or "Facility Operating Agreement"), by which Operator agreed to serve as the operator of the Premises, and hold all licenses, permits and approvals that are required by New Jersey for the Premises, and also assume responsibility for its operation, management, maintenance, and administration.

35. Manager is the manager of the Premises pursuant to the Amended and Restated Management Agreement, dated May 2, 2017 between Operator and Manager (the "Management

8

Agreement"), by which Manager agreed to provide the services set forth in the Management Agreement. *See* **Exhibit G**.

*The Subordination, Assignment and Security Agreement*

36. In connection with the Mortgage and Loan, Greystone, Borrower, Operator, and Manager entered into a certain Subordination, Assignment and Security Agreement (Borrower and Property Operator) (Seniors Housing) dated March 26, 2019 (the "SASA"). *See* **Exhibit H**. The SASA was assigned by Greystone to Fannie Mae pursuant to the Collateral Assignment.

37. In Section 3(a) of the SASA, Operator absolutely and unconditionally assigned its interest in all leases and rents to Lender. Section 3(a) states: "It is the intention of Property Operator to establish present, absolute and irrevocable transfers and assignments to Lender of all Rents and to authorize and empower Lender to collect and receive all Rents without the necessity of further action on the part of Property Owner." In return, Lender granted Operator a revocable license to exercise the power and authority granted Operator under the leases until an Event of Default, at which time the revocable license automatically terminates and Lender is entitled to all Rents. *See* SASA § 3(b).

38. Under the SASA, *inter alia*, Operator (i) subordinated its right, title and interest to and under the Facility Operating Agreement, including management fees payable to Operator by Borrower, to the Loan Agreement and the Mortgage; (ii) assigned its interest in Leases, Rents, Personalty, Contracts and Accounts (as defined in the SASA) to Lender; and (iii) permitted Lender to terminate the Facility Operating Agreement without liability and assume Operator's interest in the Management Agreement and the contracts identified on [Exhibit] B to the SASA.

39. Additionally, in Section 3(f) of the SASA, the parties consented to the appointment of a receiver:

9

> *Notwithstanding any other right provided Lender under this Assignment or any other Loan Document, if an Event of Default has occurred and is continuing, and regardless of the adequacy of Lender's security or Property Operator's solvency, and without the necessity of giving prior notice (oral or written) to Property Operator, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to lake any or all of the actions set forth in Section 3(e). If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Property Operator, by its execution of this Assignment, expressly consents to the appointment of such receiver, including the appointment of a receiver ex parte, if permitted by applicable law. Property Operator consents to shortened time consideration of a motion to appoint a receiver.*

40. Both Borrower and Operator irrevocably appointed Lender their attorney-in-fact to act in their names and to enforce the SASA. *See* SASA § 12.

***The Defaults***

41. Beginning in January 2023, Borrower failed to make the required monthly Loan payments.

42. On behalf of Fannie Mae, Greystone sent to Borrower a Notice of Payment Default, dated January 31, 2023 (the "Payment Default Notice"), notifying Borrower of a payment default for the monthly payment due on January 1, 2023 for the Loan. *See* **Exhibit I**.

43. The Payment Default Notice informed Borrower of the amount necessary to bring the Loan current.

44. The Borrower failed to bring the Loan current, and thereafter failed to make the February 1, 2023 and March 1, 2023 monthly payments for the Loan.

45. Each of these failures to make payment constituted an automatic Event of Default as defined in Section 14.01(a) of the Loan Agreement, thereby entitling Fannie Mae to accelerate the Loan.

46. Plaintiff's counsel, ArentFox Schiff LLP, sent a Notice of Acceleration and Demand to Borrower, Operator, Manager and the Borrower's key principals on March 17, 2023 (the "Notice of Acceleration"), which notified Borrower that Plaintiff had accelerated the Loan (the "Accelerated Amount"), stating in pertinent part: "Demand is hereby made for immediate payment in full of the entire unpaid principal balance of the Note, plus (to the extent lawful) accrued and unpaid interest thereon (including default interest) and the costs and attorneys' fees of Fannie Mae." *See* **Exhibit J**.

47. The Notice of Acceleration further stated: "Under the Security Instrument [i.e., Mortgage] executed by Borrower in favor of Fannie Mae, Borrower's license to collect Rents has terminated."

48. The Notice of Acceleration further stated: "Fannie Mae is exercising its right under the SASA to direct Operator to pay Fannie Mae directly all Facility Operating Agreement Rent (as defined in the SASA) and Fannie Mae is now entitled to all Rents and Facility Operating Rent as they become due and payable, including Rents and Facility Operating Rents currently due and unpaid."

49. The Notice of Acceleration further stated: "Until further notice, any Rents or Facility Operating Rents Borrower, Operator or Manager received after the occurrence of the Events of Default shall be received and held in trust for the benefit of Fannie Mae until further notice, all such Rents or Facility Operating Rents shall be applied only to bona fide current operating expenses to third parties in connection with the operation of the property with excess paid to Fannie Mae, to be applied in accordance with the Loan Documents."

50. The Notice of Acceleration further stated: "Pursuant to Section 9(f) of the SASA, Operator is not to accept or retain any payments or fees made pursuant to the Facility Operating Agreement without Fannie Mae's prior consent."

51. Borrower failed to pay the amounts due under the Loan Documents, including the Accelerated Amount.

52. Operator failed to remit to Fannie Mae any payment or fees under the Facility Operating Agreement that would otherwise have been due Operator absent Fannie Mae's direction to the Operator to not accept such payments.

53. In addition, Borrower, Operator and Manager failed to comply with its obligation under the SASA regarding Rent.

54. In an effort to delay Fannie Mae from taking further action against Borrower, Borrower requested reinstatement of the Loan, representing that it was negotiating a sale of its interests under the Ground Lease Estate, which purportedly would also resolve the payment defaults.

55. In response to Borrower's request, our counsel, ArentFox Schiff LLP, sent Borrower a Reinstatement Agreement dated March 27, 2023 ("Reinstatement Agreement"), setting forth the terms for reinstating the Loan. *See* **Exhibit K**.

56. Because of Borrower's actions, the efforts to reinstate the Loan have failed.

57. The unpaid principal amount of the Loan as of June 30, 2023 was $23,438,169.11, excluding past due interest, charges and fees. *See* **Exhibit M**.

58. Based on a May 5, 2023 broker price opinion, the current estimated value of the Premises is approximately $17,250,000. *See* **Exhibit L**.

59.  All conditions precedent to Fannie Mae's right to seek foreclosure and recovery have been performed, occurred, or otherwise have been waived.

60.  Before the filing of this lawsuit, Fannie Mae received and reviewed a title search of the public record for the purpose of identifying any lienholder or other persons and entities with an interest in the property that is subject to the prospective foreclosure. The effective date of the title search is April 23, 2023.

## COUNT I

### *Against Borrower for Foreclosure of Mortgage Against Ground Lease Estate*

61.  Fannie Mae repeats and realleges the allegations contained in Paragraphs 1 through 60 of the Complaint as if set forth herein at length.

62.  Based on the Events of Default, Fannie Mae is entitled under the Loan Documents to foreclose the Mortgage against the Ground Lease Estate.

63.  As of June 30, 2023, the amount due and owing on the Mortgage and Loan Documents is $26,374,867.70, with per diem default interest of $2,604.24 beginning to accrue on July 1, 2023, as set forth in **Exhibit M**.

64.  All Defendants have, may have or have some lien or interest on the Mortgaged Premises, which interest or lien, if any, is subsequent and/or subordinate to the Mortgage.

65.  No entities other than Fannie Mae have or may claim to have any interest in or lien on the Mortgaged Premises superior to Fannie Mae's lien on the Mortgaged Premises.

66.  To protect the security, including the Ground Lease Estate, afforded by the Note and Mortgage, it may be necessary for Fannie Mae to pay costs, including without limitation, taxes, assessments, sewer rents, water charges, and other protective charges which have been, are and/or may become liens on the Premises, and Fannie Mae demands that any payments so made

by it be added to the indebtedness otherwise due and be deemed secured by the Mortgage and adjudged a valid lien on the Premises herein described with interest from the time of said payments.

67. The Premises described herein are, or may be subject to, any state of facts an accurate survey may show, and to covenants, restrictions, easements, rights and reservations of record, if any, unpaid taxes, if any, and to any and all restrictions imposed by ordinances and/or zoning requirements of local municipal authorities, and any violations of the aforesaid, and to the physical conditions of any buildings or structures on the Premises as of the date of sale hereunder.

68. Fannie Mae requests that in the event this action proceeds to judgment of foreclosure against the Ground Lease Estate, the Ground Lease Estate be sold, subject to any state of facts an accurate survey may show, and to covenants, restrictions, easements, rights and reservations of record, if any, unpaid taxes or assessed health or housing violations, if any, and to restrictions or requirements imposed by local municipal authorities and violations thereof.

69. Fannie Mae shall not be deemed to have waived, altered, released or changed the election hereinbefore made, by reason of the receipt of any payment after the date of the commencement of this action, of any or all of the defaults mentioned herein, and such election shall continue and remain effective until the costs and disbursements of this action, including, but not limited to, reasonable attorney's fees, and any and all further defaults under the Note and Mortgage accruing prior to the discontinuance of this action, are fully paid.

70. Fannie Mae has no adequate remedy at law.

71. For the reasons set forth above, Borrower has defaulted under the Loan Documents, and Fannie Mae is entitled to foreclose the Mortgage against the Ground Lease

Estate, and to the costs, including attorney's fees, for enforcing its rights under the Loan Documents.

## COUNT II

*Against Borrower, Operator and Manager for Possession of Premises*

72. Fannie Mae repeats and realleges each and every allegation contained in Paragraphs 1 through 71 of the Complaint as if set forth herein at length.

73. Due to Borrower's default, Fannie Mae is entitled under the Loan Documents to possession and control of the Premises.

74. Borrower, Operator and/or Manager continue to be in possession of the Premises and have at all times deprived Fannie Mae of possession of said Premises.

75. For the reasons set forth above, Fannie Mae is entitled to possession of the Ground Lease Estate, Premises and Property to the exclusion of Borrower, Operator and Manager (and subject to the transition of the operations and management of the Premises at the appropriate time), and to the costs, including attorney's fees, for enforcing its rights under the Loan Documents.

## COUNT III

*Against Borrower, Operator and Manager for Payment of Rents*

76. Fannie Mae repeats and realleges each and every allegation contained in Paragraphs 1 through 75 of the Complaint as if set forth herein at length.

77. Due to Borrower's default, Fannie Mae is entitled under the Loan Documents to the payment of Rents and other costs from the Premises.

78. Borrower, Operator and/or Manager have refused to pay to Fannie Mae the Rents.

79. For the reasons set forth above, Fannie Mae is entitled to the payment of all Rents since Borrower's default under the Loan Documents, and to the costs, including attorney's fees, for enforcing its rights under the Loan Documents.

## COUNT IV

### *Against Borrower for Foreclosure – UCC or Collateral Property*

80. Fannie Mae repeats and realleges each and every allegation contained in Paragraphs 1 through 79 of the Complaint as if set forth herein at length.

81. As additional security for repayment of the Loan and performance of its obligations, Borrower, in the Mortgage, granted to Fannie Mae a security interest in, among other things, all of Borrower's "Collateral Property" or "UCC Collateral," including, among other things, Goods, Personally, Insurance Proceeds, Contracts, Rents, Leases, Names, Accounts and Other Proceeds.

82. Fannie Mae filed a financing statement (Form UCC-1) covering the UCC Collateral on May 28, 2019 with the clerk located Monmouth County, New Jersey as Filing Number 2019027371. *See* **Exhibit F**.

83. The Mortgage provides that from and after an Event of Default, Fannie Mae may proceed at its election, in any sequence: (i) to dispose of any UCC Collateral and the Mortgaged Premises in any combination consisting of both real and UCC Collateral together in one or more sales; and (ii) to exercise any remedies of a secured party under the UCC or any other applicable law, and to recover its expenses, including reasonable attorney's fees and expenses, in doing so.

84. Fannie Mae is now entitled to take possession of the UCC Collateral and to receive the proceeds from their sale toward satisfaction of Borrower's indebtedness, or to have

the UCC Collateral and the fixtures deemed part of the Borrower's Property upon foreclosure and sale thereof, without waiver of any of Fannie Mae's other rights and remedies.

85. For the reasons set forth above, Fannie Mae is entitled to take possession of the UCC Collateral and to receive the proceeds from their sale toward satisfaction of Borrower's indebtedness, or to have the UCC Collateral deemed part of the Ground Lease Estate upon foreclosure and sale thereof, without waiver of any of Fannie Mae's other rights and remedies, and to the costs, including attorney's fees, for enforcing its rights under the Loan Documents.

## COUNT V

### *Against Borrower for Appointment of Receiver*

86. Fannie Mae repeats and realleges each and every allegation contained in Paragraphs 1 through 85 of the Complaint as if set forth herein at length.

87. Due to Borrower's default, Fannie Mae is entitled under the Loan Documents to: (i) the appointment of a receiver for the Premises; (ii) to take possession of the Ground Lease Estate and Premises that are the subject of this foreclosure action, pursuant to Section 10(j) of the SASA; (iii) operate and manage the Premises using the companies currently employed for those purposes until an appropriate transition can be made to new companies; and (iv) collect Rent for debt service and the operations of the Premises. Pursuant to Section 10(j) of the SASA, Operator agrees, at Lender's option upon the occurrence of an Event of Default, to: (i) continue to provide all necessary services; (ii) fully cooperate with Lender and any court-appointed receiver until such time as Lender has arranged for a replacement provider; and (iii) both Borrower and Operator cooperate with Lender in providing an orderly transition to a replacement operator of all necessary licenses and government approvals.

88. For the reasons set forth above, Fannie Mae is entitled to the appointment of a receiver, and to the costs, including attorney's fees, for enforcing its rights under the Loan Documents.

## PRAYER FOR RELIEF

**WHEREFORE,** Fannie Mae requests this Court grant judgment as follows:

(a) Appointing a receiver to take possession of the Ground Lease Estate and Premises that are the subject of this foreclosure action, operate and manage the Premises using the companies currently employed for those purposes until an appropriate transition can be made to new companies in accordance with Section 10(j) of the SASA, and collect Rent for debt service and the operations of the Premises;

(b) Directing Borrower, Operator and Manager (as the case may be) to pay to Fannie Mae or receiver all Rents received from the Premises;

(c) Fixing the amount due on the Mortgage of Fannie Mae;

(d) Awarding Fannie Mae possession of the UCC Collateral and the proceeds from their sale toward satisfaction of Borrower's indebtedness, or deeming the Collateral Property part of the Ground Lease Estate upon foreclosure and sale thereof;

(e) Directing Fannie Mae be paid the amount due on the Mortgage, with interest, advances and costs;

(f) Adjudging the Ground Lease Estate be sold according to law to satisfy the amount due Fannie Mae;

(g) Foreclosing and barring the Defendants, and each of them, of all equity of redemption in and to such of said Ground Lease Estate as shall be sold; and

(h) Awarding Fannie Mae the costs and disbursements, including its reasonable attorney's fees, for enforcing its rights under the Loan Documents, bringing this action, and collecting any judgment issued by the Court.

(i) Awarding Fannie Mae such other and further relief as the Court may deem just and appropriate.

Dated: June 30, 2023

ARENTFOX SCHIFF LLP

By: */s/ Brian Farkas*
Brian Farkas, Esq.
1301 Avenue of the Americas, Floor 42
New York, NY 10019
Tel: (212) 484-3918
Fax: (212) 484-3990
brian.farkas@afslaw.com

*Of Counsel:*

Richard J. Krainin, Esq.
Mark A. Bloom, Esq.
ARENTFOX SCHIFF LLP
1301 Avenue of the Americas, Floor 42
New York, NY 10019
Tel: (212) 484-3918
Fax: (212) 484-3990
richard.krainin@afslaw.com
mark.bloom@afslaw.com

*Attorneys for Plaintiff Federal National Mortgage Association*